Arnold PROSS, Plaintiff-Appellant,

v.

Curtis KATZ, Roxann Management,
Corp., and Jadam Equities, Ltd.
Defendants-Appellees.

No. 1296, Docket 85–7204.

United States Court of Appeals,
Second Circuit.

Argued June 11, 1985.

Decided Feb. 28, 1986.

Frank L. Amoroso, Garden City, N.Y. (Gary D. Centola, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., of counsel), for plaintiff-appellant.

Daniel J. Beller, New York City (Martin Klotz, Kevin McNulty, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Kalman V. Gallop, Gallop, Dawson & Clayman, New York City, Michael L. Faltischek, Ruskin, Schlissel, Moscou & Evans, P.C., Mineola, N.Y., of counsel), for defendants-appellees.

Before FRIENDLY, OAKES and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This case involves claims of fraud in the handling of plaintiff's investments. Judge Wexler dismissed the complaint in the instant case for failing to state a claim for relief under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), under SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), or under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1982). He viewed Pross' complaint as merely alleging that Katz and other defendants broke a promise to perform future acts and held that such a failure to perform did not violate Section 10(b) or Section 17(a). Having thus disposed of Pross' federal claims, he declined to exercise pendent jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and dismissed the state claims as well. We also believe the complaint to be deficient but on somewhat different grounds. We conclude that the purported fraud as presently alleged was not "in connection with the purchase or sale" of securities, as required by Section 10(b), or "in the offer or sale of any securities," as required by Section 17(a). Therefore, the complaint does not allege a violation of the anti-fraud provisions of the

federal securities laws. However, we remand to permit Process to amend his complaint.

## BACKGROUND

Because Pross' complaint was dismissed for failure to state a claim, we are of course obliged to assume the facts it alleges to be true. Our task in this respect is not made easy by the length of the complaint, consisting of some 259 paragraphs comprising 70 pages, a prolixity seemingly designed to obscure rather than to illumine the events giving rise to this lawsuit.

The pertinent allegations may be summarized as follows. Pross, a practicing dentist who is not without prior experience in similar litigation, *Pross v. Baird, Patrick & Co.*, 585 F.Supp. 1456 (S.D.N.Y.1984), purchased a limited partnership interest in 1974 in a real estate partnership, ILTIT Associates, at the behest of Katz, an attorney and real estate developer who "controlled" the partnership. Pross' investment was based on Katz's promises that he would manage the partnership faithfully and reinvest the proceeds on Pross' behalf. Between 1976 and 1981, Katz induced Pross to make further investments involving a complex series of sales of real estate in various legal forms, followed by purchases of other real estate in various legal forms.

The ILTIT limited partnership was thus converted in 1976 to stock in a cooperative corporation, 444 CPW, managed and controlled by Katz. Proceeds from the sale of Pross' stock in that corporation were reinvested in another cooperative corporation, 50 Park, also controlled by Katz. In 1981, Katz induced Pross to invest in three limited partnerships that also owned various real estate, in part using proceeds from the sale of stock in 50 Park. The limited partnerships constituted Pross' last investment in Katz-related ventures.

During late 1983 and early 1984, Katz, allegedly misusing his position as the manager of Pross' investments and as Pross' attorney, is said to have taken various

fraudulent actions that divested Pross of his ownership interest in the three limited partnerships and of his remaining stock in the cooperative corporations. Ownership was transferred to Katz and other defendants in on his supposed scheme.

Although Pross' brief claims otherwise, there is no forthright allegation that, prior to 1983, Katz's conduct, in contrast to his future intentions, was either fraudulent or injurious with regard to Pross. The complaint alleges that Katz had from the outset a secret plan to divest Pross of his holdings. It also alleges ongoing promises by Katz to manage Pross' investments faithfully. Nevertheless, there is no allegation that, at the time of the final investment transaction in 1981, Pross had been fraudulently deprived of any property or otherwise injured.

Nor is there a forthright allegation that, when Katz sprung the "fraud trap," Brief of Appellant at 11, the fraudulent inducements employed to deprive Pross of his investments in 1983 purported to be part of a transaction in securities rather than the management of the particular real estate ventures. There is a three-page paragraph alleging that "in connection with the acquisition and management" of the various ventures, Katz took "at least" certain steps, including the securing of numerous blank signature pages from Pross. However, the complaint does not state with particularity which transactions involved blank signature pages, when the signatures were obtained, or how Pross was induced to sign them.

Finally, we note that various allegations in the complaint suggest that the real estate transactions at issue were undertaken in Dr. Pross' name at a time when Katz was disabled from doing so in his name under New York law. The underlying dispute may thus be over Pross' true ownership position. However, that goes to Pross' ability to prove his allegations, which must at this stage be assumed to be true.

## DISCUSSION

To violate the anti-fraud provisions of the federal securities laws, the fraud must be either in connection with the purchase or sale of a security, Section 10(b), or in the offer or sale of a security, Section 17(a). Distilling the relevant from this seemingly endless complaint, we perceive two allegations of fraud upon which liability under those sections might be premised. First, Katz repeatedly represented that he would manage Pross' investments faithfully while harboring a secret intent to convert Pross' assets to his own use in the future. Second, Katz fraudulently induced Pross to sign blank signature pages and other documents that were used to effectuate the conversion. Reading the complaint with generosity and drawing every reasonable inference in favor of the appellant, *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir.1985), we believe that these theories of liability fail to meet the statutory requirements stated above. However, we remand to allow Pross to amend his complaint with regard to the second theory of liability. Another question briefed by the parties—whether Pross' investments are "securities" within the meaning of the relevant statutes—cannot be resolved on these pleadings, and we do not reach it.

1. *Breach of the Promise of Faithful Management*

Pross alleges that Katz repeatedly promised to perform faithfully what amounted to his duties as a fiduciary while secretly intending to carry out a plan to divest Pross of his interests. This does not allege a fraud "in connection with the purchase or sale" of securities. Making a specific promise to perform a particular act in the future while secretly intending not to perform may violate Section 10(b) or Section 17(a) if the promise is part of the consideration for a sale of securities. *McGrath v. Zenith Radio Corp.*, 651 F.2d 458, 466 (7th Cir.) (fraudulent promise to employ plaintiff as corporate officer if plaintiff would sell his stock to defendant), *cert. denied*, 454 U.S. 835, 102 S.Ct. 136, 70

L.Ed.2d 114 (1981); *A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir.1967) (promise to pay for securities violates Section 10(b) when the customer's secret intention is to pay only if the price of securities appreciated). We thus disagree with the district court's view that the complaint is deficient because it alleges only that Katz failed to live up to promises of future action.

However, generalized promises to act as a faithful fiduciary stand on a different footing than other promises of future performance. It is clear that a breach of a fiduciary duty by itself is not sufficient to make out a federal claim. *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Given that rule, the failure to perform a promise not to breach such a duty also does not violate federal law. That conclusion follows from the nature of fiduciary relationships and the implications of *Santa Fe*.

■ Fiduciary duties are based on notions of contract, but they are judicial creations rather than the product of private bargaining. In many contractual relationships the parties cannot feasibly anticipate and provide contractual language for every contingency. In such circumstances, the law imposes substantive duties on a case-by-case basis by fashioning obligations that approximate what the parties would have contracted *ex ante* had they anticipated the particular events. As two commentators have stated,

Acting as a standard-form penalty clause in every agency contract, the elastic contours of the fiduciary principle reflect the difficulty that contracting parties have in anticipating when and how their interests may diverge.

Socially optimal fiduciary rules approximate the bargain that investors and agents would strike if they were able to dicker at no cost. Such rules preserve the gains resulting from the delegation of authority and the division of labor while limiting the ability of agents to further their own interests at the expense of investors. The existence of such "off-the-rack" rules reduces the costs of transacting and of enforcing restrictions on the agent's powers.

Easterbrook & Fischel, *Corporate Control Transactions*, 91 Yale L.J. 698, 702 (1982).

Fiduciary duties thus arise by operation of law, and Katz, as the manager of Pross' investments, owed Pross such a duty whether or not he explicitly promised to perform it. The promises alleged, therefore, were essentially irrelevant because they merely restated legal duties already owed. The explicit promises alleged in the complaint, therefore, were already implicit promises arising from the very nature of the relationship.

Because *Santa Fe* held that a breach of a fiduciary duty alone does not violate Section 10(b), we believe it clear that a breach of a promise not to breach that duty also fails to trigger that provision. Were we to hold otherwise, any fiduciary breach could be converted into a federal action by the simple allegation that the fiduciary had promised to perform his duties and then failed to do so. *Sante Fe* would then be a meaningless limitation on the scope of federal securities laws.

2. *The Fraudulent Inducement of the Transfer of Ownership*

Pross also claims that Katz fraudulently induced him to acquiesce in steps, principally the preparation of blank signature pages, that resulted in a transfer of Pross' securities to Katz. As presently drafted, the complaint states an action for a conversion that occurred in circumstances that do not constitute a purchase or sale of securities. The last transaction between the parties that purported to be a securities transaction was the 1981 investment in the three limited partnerships. So far as we can tell from the complaint, no fraudulent act injurious to Pross occurred before 1983 other than Katz's failure to disclose his ultimate plan to deprive Pross of his ownership interests. The long run plan and the ultimate deprivation of Pross' ownership interests, however, have far too tenuous a connection with the securities transactions of

years before to satisfy the statutory requirements.

In *A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir.1967), we held that a promise to purchase securities violates Section 10(b) where the customer's secret intention is to pay only if the price of the securities appreciates. There, however, the fraud was an integral part of the purchase of securities. It directly involved the consideration for the contract and affected the contemplated consummation of the transaction. In the present case, by contrast, there are merely allegations that from 1976–1981 Katz induced Pross to engage in securities transactions while intending to defraud Pross through a scheme to be executed at a future date. The purchase and sale of securities in 1981 was fully completed when the events of 1983 occurred. Pross was free at that time to convey his interests to a third party. Even if he retained his interests, the success of the scheme was dependent upon Pross' willingness to sign documents at some future date in ignorance of the fact that they transferred his interests to Katz.

■ An intent to cause a conversion of ownership interests at some uncertain future time and through uncertain means does not bring federal law into play, even though that intent is held at the time a purchase or sale of securities occurs. The steps to be taken to effectuate the fraud are not integral to the purchase and sale of the securities in question and are to occur only well after the securities transaction has been completed. Other transactions or events may intervene and cause the plan to be abandoned. Pross might, for example, have sold his interests, simply have changed lawyers after the investment in the limited partnerships in 1981, or refused to sign the requisite documents.

Our decision is informed by *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). *Chemical Bank* involved misrepresentations or omissions made by an auditor to a bank with regard to the financial condition of a corporation that obtained a loan from the bank. The loan was collateralized by the stock of a subsidiary of the borrower. We noted that none of the alleged misrepresentations pertained to the securities themselves. We then held that the incidental involvement of securities did not implicate the anti-fraud provisions of the federal securities laws.

■ We conclude that the allegations in the instant case are *a fortiori* inadequate. The complaint here alleges no more than a conversion of property that happened to involve securities. We are unwilling to extend the reach of the securities laws to every conversion or theft of a security. The only feature that distinguishes the present case from conversions or thefts generally is that Katz is alleged to have been a fiduciary, a factor we regard as irrelevant for reasons stated *supra.*

As presently drafted, the complaint does not allege that Katz induced Pross to take steps at the time of the purchase and sale of the latter's investments that contributed directly to the later fraudulent conversion. However, we were informed at oral argument that Pross claims that at least some of the documents used to deprive him of his property were prepared at the time he purchased some of the securities in question and that their preparation was integral to the securities transaction. If that is so, Section 10(b) or Section 17(a) may apply. We believe a securities transaction that entails as one of its integral steps the fraudulent securing of blank signature pages for purposes of a later conversion alleges a fraud "in connection with the purchase or sale" of securities.

■ The deficiency in the complaint arguably involves a failure to plead fraud with particularity as required by Fed.R. Civ.P. 9(b), a circumstance in which leave to amend is usually afforded. *See Yoder, supra,* 751 F.2d at 562 n. 6 (leave to amend "almost always" granted) (citing 2A Moore & Lucas, *Moore's Federal Practice* ¶ 9.03 at 9–34 (2d ed. 1984)). Moreover, in contrast to the legal theory relied upon by the

district court, under our view of the complaint's deficiency it may be cured by appropriate amendment. We therefore remand the case to allow Pross to amend his complaint with regard to the preparation of documents used to effectuate the conversion. On remand, Pross must forthrightly allege the circumstances in which the documents in question were prepared, including the particular transaction(s) involved and the means used to induce Pross to participate or acquiesce in their preparation.

Remanded to allow Pross to amend his complaint.