Richard GOLDBERG, et al.

v.

Mark HANKIN, et al.

Byron BLUM, et al.

v.

Mark HANKIN, et al.

Civ. A. Nos. 92–3582, 92–3735.

United States District Court,
E.D. Pennsylvania.

Sept. 27, 1993.

Richard D. Greenfield, Greenfield & Chimicles, Haverford, PA, Ann Miller, Spector,

Gadon & Rosen, Philadelphia, PA, for Richard Goldberg.

Joanne Zack, Kohn, Nast & Graf, P.C., Philadelphia, PA, for Mark Hankin.

David G. Ennis, Abington, PA, for Lowen Hankin.

David L. Narkiewicz, Lansdale, PA, Arthur E. Vossberg, III and Richard M. Jordan, White and Williams, Philadelphia, PA, for Robert M. Flood, Jr., Joseph Murphy, Laren Pitcairn, Leon Riebman, Bernard Gottlieb.

David L. Narkiewicz, Stanford S. Hunn, Hunn, Shelly & Associates, Lansdale, PA, for Harry Hilger, Jr., Arlene G. Goldbach, Old York Road Bancorp, Inc.

David L. Narkiewicz, Lansdale, PA, Irving T.J. Cooper, Abington, PA, for Eugene J. Dailey.

## MEMORANDUM

GILES, District Judge.

Plaintiffs seek to sue the defendants as members of a class of stock owners of Old York Road Bancorp, Inc. ("Bancorp") and derivatively on behalf of Bancorp.[1] Bancorp is the holding company for the Bank and Trust Company of Old York Road ("Bank"), a commercial bank organized and existing under the Banking Code of Pennsylvania. The Bank is the sole operating subsidiary of Bancorp. Bancorp's securities are registered with the Securities and Exchange Commission and are traded in the over-the-counter market.

Plaintiffs claim that defendants knowingly understated non-performing loans, failed to provide adequate loan loss reserves for problem loans and, instead, granted extensions and further credits to its problem loans customers in order to postpone the recognition of said problem loans in the publicly disseminated financial statements of Bancorp and the Bank from 1990–1992. Plaintiffs allege that by making these statements, defendants intended to, and did, create a false and mis-

---

1. Plaintiffs move to certify and represent a class of Bancorp shareholders who purchased their shares between and including the years of 1990 through 1992 ("Class Period"). Plaintiffs' motion for class certification is denied as moot in light of the disposition of defendants' motions to dismiss.

leading impression which inflated the market prices of Bancorp securities throughout the Class Period.

Plaintiffs assert four claims against the defendants in their amended complaint:[2] violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), Securities and Exchange Commission Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1991) and Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t (1988) (count I); violations of Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a–9 promulgated thereunder, 17 C.F.R. 240.14a–9 (count II); a pendent state claim on behalf of Bancorp for breach of fiduciary duty and waste of corporate assets (count III); and a state claim for negligent misrepresentation (count IV).

Defendants move for dismissal of plaintiffs' claims arguing, essentially, that plaintiffs have failed to state federal claims upon which relief can be granted and that their state law claims must be dismissed for lack of federal diversity jurisdiction.

After notice and oral argument held on August 10, 1993, the court hereby grants defendants' motions in part and denies them in part. For the reasons which follow, plaintiffs' federal securities claims are DISMISSED with prejudice, and their state law claims are DISMISSED without prejudice.

### LEGAL STANDARD

In deciding a motion to dismiss for failure to state a cognizable claim, the court must accept as true all of plaintiff's factual allegations and draw from them all reasonable inferences favorable to the plaintiff. *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980). A case should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that could be proved consis-

tent with plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### ANALYSIS

#### I. Section 10(b) Claim

To plead a Section 10(b) action, plaintiffs must show that the defendants misrepresented or omitted material information *in connection with the purchase or sale of securities. See* Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5. Both plaintiffs obtained their shares in Bancorp, the holding company for the Bank, in a merger in which all of their shares in the Bank were exchanged on a share-for-share basis for Bancorp shares.

■ Generally, when a share exchange accompanies the merger of two separate and distinct corporate entities, such exchange constitutes a "purchase or sale" for purposes of bringing a Rule 10b–5 action. *See SEC v. Nat'l Secs., Inc.*, 393 U.S. 453, 467, 89 S.Ct. 564, 572, 21 L.Ed.2d 668 (1969) (shareholders "purchased" shares in another company by exchanging shares in a merger where resulting company had different assets and future prospects). However, if the merger or share exchange involves clearly no more than internal corporate reorganization, then the transaction does not fall within the scope of Rule 10b–5. *See, e.g., In re Penn Central Securities Litigation*, 494 F.2d 528, 538 (3d Cir. 1974); *Gelles v. TDA Industries, Inc.*, 1993 WL 275216 (S.D.N.Y.) citing *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1343 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

■ The court finds, as a matter of law, that plaintiffs were not "purchasers" of Bancorp shares and, therefore, they may not assert a Rule 10b–5 action against the defendants. The merger between Bancorp and the Bank was not one in which two separate and distinct corporations were combining to form an entirely new entity. Here, the Bank's merger was nothing more than a corporation deciding to reorganize and diver-

---

**2.** Plaintiffs filed their original complaint on June 19, 1992. On November 10, 1992, plaintiffs were granted leave to file an amended complaint, which was then filed on January 6, 1993.

sify its line of business. In such a merger, "the elements entering into [plaintiffs'] decision were the same as those typically confronting any shareholder voting on the enlargement of the charter purposes of his corporation." *See In re Penn Central, supra* at 538.

Plaintiffs each owned shares of stock in the Bank for several years prior to its merger with Bancorp. After the merger, their shares in the Bank were simply converted into shares in the holding company for the Bank. While the merger allowed Bancorp to diversify its line of business into areas other than banking, such potential alone is not enough to consider plaintiffs "purchasers" of Bancorp stock. The Bank's stock value was the very same after the merger as it was before the merger. The very same Board of Directors which controlled the Bank before the merger controlled the holding company after the merger.

■ Additionally, this was not a "forced sale." Plaintiffs assert that at the time of the merger, they were faced with the limited choices of accepting shares in a company that was "materially different" from the one in which they had originally purchased shares, or sell their shares for an amount equal to the "fair value" of their shares. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss And/Or for Summary Judgment at 21. They argue that this transaction effected "such a significant change in the nature of plaintiffs' investment and investment risks as to amount to a new investment." *Id.* The court disagrees. Plaintiffs were advised fully of the reasons for the merger, and were given the opportunity to sell their shares in the Bank instead of accepting an equal number of shares in the Bank's holding company. No "forced sale" existed, since plaintiffs retained their interest in the Bank. *See Nutis v. Penn Merchandising Corp.,* 610 F.Supp. 1573, 1578 (E.D.Pa.1985), *aff'd,* 791 F.2d 919 (3rd Cir. 1986); *Matthey v. KDI Corp.,* 699 F.Supp. 135, 139–40 (S.D.Ohio 1988).

## II. *Section 20(a) Claim*

■ Section 20(a) of the Securities Exchange Act of 1934 provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly or severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith. . . .

15 U.S.C. § 78t(a) (1988).

The third circuit has held that liability under this section can exist only if primary liability has been established as to another controlled defendant. *See Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 279 (3rd Cir. 1992) ("Section 20(a) imposes joint and several liability on any person who 'controls a person liable under any provision of' the Securities Exchange Act of 1934. The text of the statute requires the plaintiff to prove that one person controlled another person, and that the "controlled person" is liable under the Act."). Thus, "once all predicate § 10(b) claims are dismissed, there are no allegations upon which § 20(a) liability can be based." *Id.* at 279. Here, the dismissal of the Section 10(b) claims against the defendants dictates dismissal of the Section 20(a) claims asserted against them.

## III. *Section 14a–9 Claim*

■ Under the Federal Securities Exchange Act, it is unlawful for any person to solicit proxies by making false or misleading statements. *See J.I. Case Co. v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) (the purpose of Section 14(a) is to prevent management from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation).

Generally, to prevail on a Section 14a–9 claim, a plaintiff must show (1) that there was a misstatement or omission within the proxy materials and (2) that the misstatement or omission was material and causally related in the accomplishment of the transaction giving rise to the litigation. *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970).

■ However, if a proxy omission is material, a plaintiff need not prove that the omis-

sion was the direct cause of the harm alleged. Under such circumstances, a plaintiff need only show that the proxy solicitation itself, rather than the particular defect in the solicitation, was "an essential link in the accomplishment of the transaction."[3] *Mills* 396 U.S. at 385, 90 S.Ct. at 622. *See, also, Affiliated UTE Citizens v. United States,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (the obligation to disclose and the withholding of a material fact establish the requisite element of causation in fact).

"An omitted fact is material if there is a 'substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.'" *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 639 (3d Cir.1990) citing *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

■ Here, plaintiffs allege that defendants issued false and misleading proxy materials on September 21, 1990, June 14, 1991, and June 3, 1992 for the purpose of electing officers and directors. Specifically, they allege that

> "[Defendants] fail to disclose ... that defendants have mismanaged the Bank and [Bancorp], wasted corporate assets, engaged in self-dealing and have subjected [Bancorp] to liability for its violations of federal securities law ... In so doing, defendants acted with the knowledge that such claims had been, or in probability would be, asserted against them."

Amended Complaint at 31, ¶ 71.

Essentially, plaintiffs conclude that the alleged information withheld from each of the proxy statements would have, if published, reflected defendants' lack of integrity in managing the company. They speculate that if the pertinent facts had been disclosed, shareholders would never have voted the defendants into their respective positions. Plaintiffs allege that as a result of the dissemination of the 1990, 1991, and 1992 proxy statements, respectively, the following defendant directors were voted onto the Board of Directors:

1990 Election Year: Mark Hankin and James Schwartzman

1991 Election Year: Laren Pitcairn, Dr. Leon Riebman and Joseph Murphy

1992 Election Year: Harry Hilger, Jr.

The court has given careful review to plaintiffs' amended complaint, treating as true all objective facts averred and all reasonable inferences therefrom. We find that plaintiffs have not alleged a cognizable section 14a–9 claim against the defendants. As a matter of law, plaintiffs' allegations fail to show that the alleged information omitted from the proxy statements was material.

Of all the factual allegations averred by plaintiffs in the amended complaint, the only "actionable" statements under Section 14a–9 are those pertaining to a self-dealing scheme that allegedly occurred between Mark Hankin and Lowen Hankin in 1991. *See* Amended Complaint at 20–23. The rest of plaintiffs' factual allegations averred against the other defendants amount to no more than claims of breach of fiduciary duty or corporate mismanagement. While, arguably, fail-

---

**3.** The Court found that

[w]here the misstatement or omission in a proxy statement has been shown to be "material," ... that determination itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. [citations omitted] Th[e] requirement that the defect have a significant propensity to affect the voting process is found in the express terms of Rule 14a–9, and it adequately serves the purpose of ensuring that a cause of action cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by Section 14(a).

There is no need to supplement this requirement ... with a requirement of proof of whether the defect actually had a decisive effect on the voting. Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if ... he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

ure to disclose a breach of fiduciary duty or corporate mismanagement may be considered a material omission, such nondisclosure is not actionable under Section 14a–9 unless accompanied by objective material omissions relating to self-dealing. *See, also, Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 638–639 (3d Cir.1990).

■ Plaintiffs aver no factual allegations to show that the individual defendants, other than Mark Hankin and Lowen Hankin, were participating in fraud or self-dealings. Rather, they allege broadly that "[I]ndividual defendants ... engaged in self-dealing by approving and making loans to officers and directors and their associates, large portions of which were unsecured at a time when no unsecured loans should be made and by permitting a huge amount of loans to officers and directors to remain outstanding." Amended Complaint, at 34, ¶ 78(h). This allegation is not sufficiently specific, and it does not explain adequately how their actions amounted to "self-dealing." Plaintiffs have lumped all of the individual defendants together in self-dealing ascribed to Mark Hankin and Lowen Hankin only, without any supportive factual allegations.

■ With regards to the Section 14a–9 claim against Lowen Hankin, since he was not up for reelection in any of the years at issue in plaintiffs' amended complaint, plaintiffs' claim that he be removed from the Board must be dismissed. Put another way, any omission or misrepresentation made in the proxy statements for 1990, 1991 and 1992 cannot be said to have been sufficient to defeat his election to Bancorp's Board of Directors since he was not up for reelection in any of those years.

Plaintiffs do allege self-dealing between Mark Hankin and Lowen Hankin occurring in 1991. However, since Mark Hankin was a candidate for reelection in 1990, and not in 1991, the alleged omissions or misrepresentations made in the 1991 proxy statements could have had no bearing on Mark Hankin's 1990 reelection to the Board of Directors.[4]

## IV. State Law Claims

Plaintiffs also allege pendent state law claims for breach of fiduciary duty, waste of corporate assets and negligent misrepresentation. No diversity of citizenship is alleged. Since this court does not have jurisdiction to decide these state claims, they will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate order follows.

### ORDER

AND NOW, this 27th day of September, 1993, upon consideration of defendants' motions to dismiss, plaintiffs' response thereto, and the replies of the parties, and after notice and oral arguments held on August 10, 1993, it is hereby ORDERED for the reasons which follow, that defendants' motions are GRANTED in part and DENIED in part. Plaintiffs' federal securities claims are DISMISSED with prejudice, and their state law claims are DISMISSED without prejudice.

---

4. Plaintiffs allege, without any proof offered, that defendants Mark and Lowen Hankin "conceived their scheme" to engage in self-dealing activities as early as February, 1990, even though no action was undertaken until a year later. This allegation is speculation about the mental state of persons who subsequently acted, and as such it cannot be treated as "actionable" activity in 1990.