**Donald S. SOFONIA, individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**PRINCIPAL LIFE INSURANCE CO.; Principal Financial Services, Inc.; and Principal Financial Group, Inc., Defendants.**

**No. 4:05–CV–40.**

United States District Court, S.D. Iowa, Central Division.

July 22, 2005.

Brian L Campbell, Faegre & Benson—DM, Des Moines, IA, Carl Micarelli, Joseph P Moodhe, Debevoise & Plimpton LLP, New York, NY, for Principal Financial Group, Inc., Principal Financial Services, Inc., Principal Life Insurance Company, Defendants.

Robert W. Bishop, Bishop & Associates, P.S.C., Louisville, KY, Edward W Cochran, Cochran & Cochran, Shaker Heights, OH, David J Darrell, Baudino Law Group, PLC, Des Moines, IA, Harley C Erbe, Erbe Law Firm, West Des Moines, IA, for Donald S. Sofonia, Plaintiff.

## ORDER

PRATT, District Judge.

Before the Court is Plaintiff Donald Sofonia's ("Plaintiff") Motion for Remand (Clerk's No. 5). Also before the Court is Defendants' Motion to Dismiss (Clerk's No. 6). Each party has filed a resistance to the other's motion and each party has filed a reply brief. The matters are fully submitted.

## I. PROCEDURAL BACKGROUND

Plaintiff filed the present action in the Iowa District Court for Polk County on December 23, 2004, on behalf of himself and all others similarly situated,[1] alleging that Defendants are liable for fraud, breach of fiduciary duty, and unjust enrichment. Plaintiff and the other putative class members (hereinafter collectively referred to as "Plaintiff") are part of a settlement class in an underlying action from this Court, entitled *Grove et al. v. Principal Mutual Life Insurance Company*, 200 F.R.D. 434 (S.D.Iowa 2001). Defendants removed the present action to federal court on January 27, 2005, asserting that the action is governed by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(c) and 78bb(f)(2), which if applicable, preempts Plaintiff's claims. On February 22, 2005, Plaintiff filed an Amended Complaint. The Amended Complaint is substantially identical to the original state court petition, asserting claims for breach of fiduciary duty, both in the form of self-dealing and failure to disclose, common law fraud and misrepresentation, and unjust enrichment, however, the Amended Complaint omits from the putative class all annuity holders, effectively reducing the putative class to the approximately 810,000 individuals who held certain life insurance policies with Defendants.

## II. FACTUAL BACKGROUND

In 1997, policyholders of the Principal Life Insurance Company ("Principal Life") filed the *Grove* class action litigation, alleging deceptive sales practices. On April 30, 2001, the undersigned approved a settlement in the *Grove* litigation. Plaintiff estimates that the *Grove* class action cost Defendants approximately $375 million, including attorney fees for Defendants and for the *Grove* class. Plaintiff's present action essentially alleges that, during a process known as "demutualization,"[2] Defendants made misrepresentations to the *Grove* class which ultimately had the effect of depriving the class members of the benefits of the *Grove* litigation.[3]

Prior to 2001, Principal Life was a stock life insurance company indirectly wholly owned by Principal Mutual Holding Company ("Principal Mutual"), an Iowa mutual holding company. Principal Mutual had no stockholders and was governed by its "members," or policyholders. The "membership interests," or rights of the policyholders of Principal Life, included the right to vote on matters such as the election of directors, and the right to participate in the distribution of residual value should Principal Mutual ever be liquidated.

In October 2001, Principal Mutual (and consequently Principal Life) went through the process of demutualization, whereby it converted from a mutual insurance hold-

---

1. The original putative class would have consisted of approximately 960,000 members, according to Plaintiff's state court Petition.

2. The demutualization process began before the *Grove* settlement was approved by this Court. The *Grove* litigants entered into a tentative settlement on November 14, 2000, which was ultimately approved by this Court on April 30, 2001. The Plan for demutualization began on March 31, 2001 and was finalized on October 26, 2001.

3. The *Grove* class action sought damages for a fraudulent scheme and common course of

deceptive sales practices with respect to the sale of life insurance policies and annuities. Specifically, the *Grove* Plaintiffs claimed that Principal's agents deceived them into purchasing life insurance policies and or annuities through the use of false and misleading policy illustrations, marketing materials, and sales presentations. The details of the settlement are complex and will not be reviewed here. The approval of the settlement, however, appears on the Court's docket, Case No. 4:97–cv–90224, Clerk's No. 279.

ing company structure to a publicly traded stockholder-owned corporate structure. As part of the demutualization, Principal Mutual, along with several other entities, merged into Principal Financial Services ("Principal Financial"), a wholly owned subsidiary of Principal Financial Group ("PFG"). Once the demutualization plan was approved by Principal Mutual's Board of Directors, it was submitted to the members of Principal Mutual (the policyholders of Principal Life) for approval. Eligible policyholders, including Plaintiff, were mailed notice packages consisting of a two-part Policyholder Information Booklet explaining the demutualization, a proxy card for voting on the plan, and other materials. Principal Mutual members approved the Plan, as did the Iowa Commissioner of Insurance. The demutualization plan became effective on October 26, 2001, and provided that Principal Mutual's members, the putative Plaintiff class here, would receive publicly traded common stock in PFG in exchange for their "Membership Interests" in Principal Mutual. Plaintiff's Amended Complaint alleges that Defendants fraudulently implemented the demutualization scheme only to shift the economic costs it incurred in the *Grove* litigation back onto the *Grove* class members. More specifically, Plaintiff claims that deceptive statements in the Policyholder Information Booklet caused policyholders to vote in favor of the demutualization and, as a result, the *Grove* class members received smaller amounts of PFG stock than they would have absent Defendants' misconduct.

## III. LAW AND ANALYSIS

### A. *Plaintiff's Motion to Remand*

 Defendants removed the present case to federal court pursuant to 28 U.S.C. § 1441, which provides that a claim filed in state court may be removed if it originally could have been brought in federal court.

A removed case will be remanded to state court, however, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction[.]" 28 U.S.C. § 1447(c). Defendants, as the party opposing remand, bear the burden of establishing the propriety of federal subject matter jurisdiction. *See In re Business Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir.1993). In this case, Defendants claim that removal is mandated by the provisions of SLUSA:

> In recent years, Congress passed two statutes designed to alleviate the problems corporations suffered as a result of class action lawsuits. The first of these, the PSLRA, was designed to curb abuse in securities suits, particularly shareholder derivative suits in which the only goal was a windfall of attorney's fees, with no real desire to assist the corporation on whose behalf the suit was brought. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir.1999). The PSLRA immediately drove many would-be plaintiffs to file their claims in state court, based on state law, in order to circumvent the strong requirements established by the statute. Motivated by a response to keep such lawsuits in federal court, Congress quickly passed SLUSA in order to "prevent plaintiffs from seeking to evade the protections that federal law provides against abuse litigation by filing suit in State, rather than federal, courts." H.R. Conf. Rep. No. 105–803 (Oct. 9, 1998). *With some exceptions, SLUSA made the federal courts the exclusive fora for most class actions involving the purchase and sale of securities.* Primarily, SLUSA mandates that any class action based on an allegation that a "covered security" was sold through misrepresentation, manipulation, or deception shall be removable to federal court.

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.,* 105 F.Supp.2d 1037, 1039 (D.Minn.2000) (emphasis added).

SLUSA states: "Any covered class action brought in any State court involving a covered security ... shall be removable to the Federal district court for the district in which the action is pending ...." 15 U.S.C. § 77p(c). A nearly identical provision is outlined in 15 U.S.C. § 78bb(f)(2) ("Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending ...."). To establish that the present action falls within SLUSA's preemptive scope, Defendants must show that Plaintiff's claim satisfies four criteria: (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant is alleged to have engaged in conduct described by criterion (3) "in connection with" the purchase or sale of a "covered security." *Green v. Ameritrade, Inc.,* 279 F.3d 590, 596 (8th Cir.2002).

With regard to the first two elements of the SLUSA requirements for removal, Plaintiff concedes both that the present action is a covered class action and that it purports to be based on state law. Plaintiff also admits the third element of the removal requirements, as evidenced by language throughout the Complaint. *See e.g.,* Compl. at 3 ("Defendants formulated

... writings and communications which contained deceptive statements, overt misrepresentations, misleading information, omissions and simple lies, calculated to conceal the Defendants' scheme to defraud the Class Policyholders").[4] Plaintiff does, however, dispute that the present action involves either "covered securities" or "the purchase or sale" of securities, as required in the fourth element. The gravamen of the parties' disagreement, then, turns on whether the present matter deals with "covered securities" and whether the matter is "in connection with" the "purchase or sale" of such securities.

### 1. *"Covered securities."*

■ Plaintiff argues that the present matter does not involve "covered securities": "PSLRA and SLUSA are thus inapplicable because this case does not involve covered securities, but rather insurance products that are exempt from the federal securities laws of which the Acts are a part." Pl.'s Br. at 5. A "covered security" is defined as "a security that satisfies the standards for covered security specified in paragraph (1) or (2) of section 77r(b) of this title, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred ...." 15 U.S.C. § 77p(f)(3). Section 77r(b), adopted by § 78bb(f)(5)(E), defines a "covered security" as one listed on the New York Stock Exchange, the American Stock Exchange, or the Nasdaq National Market, or a security issued by an investment company that is registered, or for which a registration statement has

---

**4.** Plaintiff's Brief in Support of Motion to Remand states: "Plaintiff concedes the first two elements, but contests the third and fourth, i.e., that this action involves covered securities or a purchase or sale of securities." Br. at 3–4. It appears that Plaintiff does not actually disagree that the third element dealing with misrepresentations has been satisfied. Rather he contests all portions of the fourth element outlined. in *Green,* that the defendant engaged in misrepresentation or omissions "in connection with" the "purchase or sale" of a "covered security."

been filed under the Investment Company Act of 1940.

There is no dispute that neither the life insurance policies nor the attendant membership interests of the policy holders do not satisfy any of the requirements for being a "covered security" delineated in section 77r(b). Moreover, there is no dispute that the life insurance policies eventually exchanged for stock in PFG are specifically exempted from coverage under the securities laws by the language of 15 U.S.C. § 77c(a)(8). Securities specifically exempted from the application of Title 15 include: "Any insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the insurance commissioner, bank commissioner, or any agency or officer performing like functions ...." 15 U.S.C. § 77c(a)(8); see e.g., Collins v. Baylor, 302 F.Supp. 408, 410 (N.D.Ill.1969) ("The insurance policy and like contracts are not regarded in the commercial world as investment securities offered to the public for investment purposes. The entire tenor of the act would lead, even without this specific exemption, to the exclusion of insurance policies from the provisions of the act, but the specific exemption is included to make misinterpretation impossible.").

Despite the fact that the life insurance policies exchanged for PFG stock are clearly not covered securities within the meaning of SLUSA, it is abundantly clear that the PFG stock *is* a covered security within the meaning of the Act. PFG common stock is publicly traded on the New York Stock Exchange under the symbol "PFG." Thus, the stock received by Plaintiff falls squarely within the definition of a "covered security" in section 77r(b). Accordingly, if the exchange of life insurance policy membership interests for PFG stock was made "in connection with" the "purchase or sale" of PFG stock, Plaintiff's case is wholly preempted by SLUSA.

2. *"In connection with."*

■ Plaintiff's primary argument is that the presence of securities in this case is incidental to his theories of recovery, thus the federal securities laws should not be implicated. Specifically, Plaintiff argues that his claims for relief are premised on the wrongful recapture of the *Grove* settlement benefits by the Defendants during the demutualization: "The type of consideration received by Principal Life Insurance Company's insureds is irrelevant; Plaintiff is only concerned with the amount of the consideration to the extent it included wrongful recapture of the settlement benefits and is not focused on the form that it took." Pl's Br. at 8–9. Plaintiff cites *Pross v. Katz*, 784 F.2d 455, 459 (2d Cir.1986), in support of the proposition that federal securities laws are not implicated where the involvement of securities is incidental.

In *Pross*, a practicing dentist purchased a limited partnership interest in a real estate partnership at the behest of Katz, an attorney and real estate developer who "controlled" the partnership. *Id.* at 456. Pross invested in the partnership based on Katz's promises that he would faithfully manage the partnership and reinvest the proceeds on Pross's behalf. *Id.* Over the next several years, Katz induced Pross to make further investments. *Id.* Ultimately, Katz was alleged to have used his fiduciary position to fraudulently divest Pross of his ownership of stock in both a cooperative corporation and three limited partnerships. *Id.* The Second Circuit Court of Appeals found that Pross's allegations were inadequate to trigger application of federal securities laws because the causes of action "alleged no more than a conversion of property that happened to involve

securities." *Id.* at 459. The *Pross* Court pointed out that, as pleaded, the case was virtually indistinguishable from general conversion or theft cases and thus, did not satisfy the "in connection with" requirement of the federal securities laws. *Id.*

Despite this finding, the *Pross* Court noted that, at oral argument, Pross claimed that at least some of the documents used to deprive him of his property were prepared at the time certain securities were purchased and that the preparation of those documents was "integral to the securities transaction." *Id.* The Court granted Pross leave to amend his Complaint, stating: "We believe a securities transaction that entails as one of its integral steps the fraudulent securing of blank signature pages for purposes of a later conversion alleges a fraud 'in connection with the purchase or sale' of securities." *Id.*

In a case cited by Defendants, *Securities and Exchange Commission v. Nat'l Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), National Securities sought to obtain shareholder approval of a merger between its subsidiary company, National Life & Casualty Insurance Co., and Producers Life Insurance Co. *Id.* at 454, 89 S.Ct. 564. The communications made to shareholders purportedly contained omissions and misrepresentations of material facts. *Id.* Ultimately, shareholders approved the merger and exchanged shares of stock in the old company for shares of stock in the new, merged company. *Id.* The Supreme Court found that misstatements or omissions of National Securities were made "in connection with" the sale or purchase of securities in the new, merged company: "[H]ere an alleged deception has affected individual shareholders' decisions in a way not at all unlike that involved in a typical cash sale or share exchange. The broad antifraud purposes of the statute and the rule would clearly be furthered by their application to this type of situation." *Id.* at 467, 89 S.Ct. 564.

The Court finds that the present facts are readily distinguishable from *Pross* and are more similar to those alleged in *National Securities*. Here, Plaintiff alleges in his Complaint that Defendants omitted information or made false representations which induced the life insurance policy holders to exchange their membership interests for PFG stock. Despite Plaintiff's claim that he is, in reality, only concerned with the recapture of benefits from the *Grove* class action settlement, the fact remains that his Complaint has plainly and clearly alleged that Defendants fraudulently induced him to exchange his membership interests in Principal Life for common stock in PFG. The alleged fraudulent conduct was, therefore, an integral step in Plaintiff's exchange of his membership interest for PFG stock and the present action satisfies the "in connection with" requirement for SLUSA preemption. *See also Metlife Demutualization Litig.*, 322 F.Supp.2d 267 (E.D.N.Y.2004) (accepting without discussion that nearly identical facts were made in connection with the purchase or sale of securities for purposes of federal securities laws).

### 3. *Purchase or sale.*

■ Plaintiff finally argues that the exchange of life insurance policy membership interests for PFG stock cannot qualify as a "purchase or sale" within the meaning of federal securities laws. Defendants, on the other hand, argue that the exchange was a "purchase" of securities because it involved a fundamental change in the life insurance policy holders' interests in PFG.

Plaintiff acknowledges that an exchange of shares as part of a merger can be considered a "purchase or sale." *See e.g., Nat'l Secs., Inc.*, 393 U.S. at 467, 89 S.Ct. 564. Nonetheless, Plaintiff insists that the

general rule is inapplicable here because: 1) there was no exchange of shares; and 2) an exchange of shares as part of a merger cannot be considered a purchase or sale when the merger is nothing more than an internal corporate reorganization. In support of his arguments, Plaintiff relies on *Rathborne v. Rathborne*, 683 F.2d 914, 920 (5th Cir.1982); *In re Penn Cent. Secs. Litig.*, 494 F.2d 528, 533 (3d Cir.1974); *Goldberg v. Hankin*, 835 F.Supp. 815, 817–18 (E.D.Pa.1993); and *Watts v. Des Moines Register and Tribune*, 525 F.Supp. 1311 (S.D.Iowa 1981). The cited cases do not, however, support Plaintiff's position.

In *Rathborne*, a majority of shareholders in a closely held real estate corporation voted to transfer a portion of the original corporation into a newly created second corporation. *Rathborne*, 683 F.2d at 915. The plaintiff in *Rathborne* vehemently objected to the division, even though he received the same proportionate share of stock in the new corporation that he maintained in the first. *Id.* at 916. The district court found that the plaintiff did not have standing to assert a federal securities claim because he was neither a purchaser or seller of securities. *Id.* at 917. The Court of Appeals affirmed, finding:

> An arms-length stock-for-assets trade between two distinct and independent corporations will constitute a purchase or sale of securities for the purposes of § 10(b). However, a transfer of securities from a wholly controlled subsidiary to its parent or between two corporations wholly controlled by a third does not amount to a statutory purchase or sale. *See e.g., International Controls Corporation v. Vesco*, 490 F.2d 1334, 1343 (2d Cir.1974)("(S)elf-dealing transaction (between corporation and wholly controlled subsidiary) does not ... satisfy the 'purchase or sale' requirement of § 10(b) and Rule 10b–5"); *cf. Blau v. Mission Corp.*, 212 F.2d 77, 80 (2d Cir. 1954) (exchange of shares between par-

ent corporation and wholly controlled subsidiary is not a statutory purchase or sale, but is "a mere transfer between corporate pockets"). In this case, all parties agree that the new-born RPI was an entity spawned and wholly controlled by its corporate parent, RLC. The stock-for-assets "trade" between RLC and RPI can hardly be characterized as the kind of arms-length transaction which would constitute a statutory purchase or sale. Rather, it was a mere "transfer between corporate pockets." We therefore conclude the RLC–RPI stock-for-assets exchange did not amount to a purchase or sale transaction for the purposes of § 10(b) or Rule 10b–5.

*Rathborne v. Rathborne*, 683 F.2d at 917–18.

In *In re Penn Central Securities Litigation*, the public directly held stock in Penn Central Company Railroad. *In re Penn Cent.*, 494 F.2d at 532. Stockholders in the railroad approved a reorganization whereby a new holding company was created which owned the railroad as its 100% subsidiary. *Id.* Shareholders in the railroad received proportionate shares of stock in the new holding company in exchange for their shares of stock in the directly held railroad. Several shareholders sued, but their claim was rejected on the basis that there had been no purchase or sale of securities. *Id.* at 533. In affirming the decision, the Third Circuit Court of Appeals noted that " 'Congress ... did not seek to regulate transactions which constitute no more than internal corporate mismanagement.' " *Id.* (quoting *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)). Likewise, both *Goldberg v. Hankin* and *Watts v. Des Moines Register and Tribune*, involved situations where a mere internal reorganization barred a finding that a purchase or sale of securities was involved. *See*

*Goldberg,* 835 F.Supp. at 817 ("After the merger, [plaintiffs'] shares in the Bank were simply converted into shares in the holding company for the Bank ... the Bank's stock value was the very same after the merger as it was before the merger."); *Watts,* 525 F.Supp. at 1318 (" '[T]he economic realities of the situation establish that (certificate holders) retained every right normally held by a shareholder with the exception of the right to vote, one which was only temporarily suspended.' " (quotation omitted)).

■■ There are certain similarities between the cases cited by Plaintiff and the present one. For example, the merger in the present case involved a complete reorganization of a parent company and several of its subsidiaries. From the cases cited, however, Plaintiff would establish a blanket rule that the Court need look no further when a corporate reorganization is alleged. The holdings of the cited cases, however, are substantially narrower. That is, when a mere reorganization that does nothing to change the fundamental nature of shareholder interests is involved, there is no purchase or sale within the meaning of federal securities laws. Thus, the Court must evaluate "the economic reality of the transaction" to determine whether "[s]ome transfer of ownership, whether in the form of a surrender of control, change in ownership or alteration of the fundamental nature of an investment" has been shown to satisfy the purchase or sale element of proof. *Watts,* 525 F.Supp. at 1318–19 (citations omitted); *see also In re Penn Cent.,* 494 F.2d at 534 (a purchase or sale may be found where there is a "major corporate restructuring requiring the same kind of investment decision ... as would a proposed merger with a separate existing corporation.").

Defendants here argue: "By exchanging their membership interests for the shares in the demutualized company, participants acquired a transferable security in a fixed amount, where before they had ... unascertained Membership Interests." Defs.' Br. at 12. While clearly the policyholders did not sell any security interests, because the mutual policies they had are not "covered securities," the pivotal question is whether their acquisition of stock in PFG can qualify as a "purchase." The Court finds it does.

Plaintiff concedes that the language of the federal securities statutes, and thus the term "purchase," must be defined broadly. *See Watts,* 525 F.Supp. at 1318; *see also Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 11 n. 7, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Though Plaintiff attempts to distinguish cases such as *Metlife* by noting that such cases were brought under the Securities Exchange Act of 1934, his argument amounts to a distinction without a difference. The Eighth Circuit in *Green* held that courts may look to the interpretation of the Securities Exchange Act's identical language in interpreting the SLUSA "in connection with the sale or purchase of a covered security" criterion. *See Green,* 279 F.3d at 597 (citing SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (2001) and § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)(1994)). In the present case, the various Principal companies underwent a fairly complex reorganization. As part of this reorganization, the company demutualized Principal Life Insurance Company. The policyholders of that company exchanged certain voting rights and non-transferable membership interests for tangible, transferable, valuable stock in PFG. Policyholders did not exchange twenty shares of stock in one company for twenty equally valued shares of stock in another company. Rather, the nature of their investment changed dramatically from a non-liquid, non-property interest into a concrete equity and ownership interest in a freely transferable security.

While the consideration "paid" for the stock was not cash, as is commonly the case in securities transactions, courts have repeatedly recognized, as evidenced by cases discussed *supra*, that various forms of payments may constitute consideration for a purchase. *See e.g., Watts*, 525 F.Supp. at 1319 (purchase or sale may "in some cases encompass transactions that bear little resemblance to conventional purchases and sales").[5] Thus, despite the fact that transaction was between commonly held companies, the economic and factual reality of the transaction is that it constituted a purchase or sale of securities within the meaning of federal securities laws.

### 4. *Delaware carve-out exception.*

■ Plaintiff next argues that, even if this case involves misrepresentations made in connection with the purchase or sale of covered securities, as the Court has determined it does, the savings clauses of the PSLRA and SLUSA mandate remand to state court. The savings clauses, commonly referred to as "Delaware carve-out"[6] exceptions, provide that a "covered class action ... that is based upon the statutory or common law of the State in which the issuer is incorporated ... may be maintained in State or Federal court by a private party." 15 U.S.C. §§ 77p(d)(1)(A),

78bb(f)(3)(a)(I). An action will be considered a covered class action within the meaning of the clauses if it involves:

(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or *to holders of equity securities* [7] of the issuer; or

(ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that—

(I) is made by or on behalf of the issuer or an affiliate of the issuer *to holders of equity securities* of the issuer; and

(II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 77(p)(1)(B) (emphasis added). As Defendants point out, and as the italicized portions of the statute show, each provision of the Delaware carve-out exception exempts claims arising from an offering of a company's securities to its *existing equity security holders*. *See e.g., G.F. Thomas Invs., L.P. v. Cleco Corp.*, 317 F.Supp.2d 673, 681–85 (E.D.La.2004) (finding Delaware carve-out exception inapplicable where shares were offered on the open market and not offered exclusively from or to holders of the issuer's securi-

---

**5.** In Plaintiff's reply brief, he attempts to argue that the membership interests exchanged for the PFG stock had no value and thus could not constitute valuable consideration. The Court finds this argument to be without merit. While the membership interests had no identifiable monetary value, such a measure is not required for the interest to be consideration as consideration comes in various and sundry forms. Moreover, Plaintiff takes a directly contrary position in paragraph 15 of the Complaint where he states that the membership rights "had calculable value" to policyholders.

**6.** The phrase "Delaware carve-out" comes from a 1998 Delaware case where the Court

described the provisions of 15 U.S.C. § 78bb as being particularly applicable to Delaware law and thus described them as "Delaware carve-outs." *See Malone v. Brincat*, 722 A.2d 5, 13 (Del.1998).

**7.** Black's Law Dictionary defines an "equity security" as: "A security representing an ownership interest in a corporation, such as a share of stock, rather than a debt interest, such as a bond; any stock or similar security, or any security that is convertible into stock or similar security or carrying a warrant or right to subscribe to or purchase stock or a similar security, and any such warrant or right."

ties); *accord Greaves v. McAuley*, 264 F.Supp.2d 1078 (N.D.Ga.2003) (majority of plaintiff's claims excluded from SLUSA under the Delaware carve-out because they involved communications *to shareholders* under the law of the state of incorporation concerning decisions whether or not to vote for the merger). Plaintiff spends a substantial amount of time arguing that the Principal reorganization and demutualization constituted a buyout or tender offer, but fails to address the requirement of the exception that the securities have been offered to existing equity security holders. Indeed, Plaintiff repeatedly emphasizes that the life insurance policies and their attendant membership interests do not constitute equity securities.[8] *See* Pl.'s Br. at 4–7. Accordingly, Plaintiff has failed to show that the Delaware carve-out exception is applicable to this case and the Court must conclude that it is not.

### B. *Defendants' Motion to Dismiss*

Defendants raise numerous arguments in support of their motion to dismiss.

Having found that Plaintiff's action is preempted by SLUSA,[9] the most compelling and, for the Plaintiff, unavoidable of these is the fact that SLUSA requires that the action be dismissed. The Act provides that once the requirements for preemption have been satisfied, "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party ...." 15 U.S.C. §§ 77p(b), 78bb(f)(1). Accordingly, Defendants' Motion to Dismiss is granted.[10] Defendants' remaining grounds for dismissal[11] are moot.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Remand (Clerk's No. 5) is DENIED. Defendant's Motion to Dismiss (Clerk's No. 6) is GRANTED.

IT IS SO ORDERED

8. Indeed, this is Plaintiff's primary argument in support of his assertion that the present matter does not involve the purchase or sale of covered securities.

9. For clarity, because all of Plaintiff's causes of actions arise from the same set of operative facts, and because each of Plaintiff's claims arises from an allegation that misrepresentations were made in connection with the purchase of covered securities, all of the state claims alleged therein are preempted by SLUSA.

10. Plaintiff's resistance to Defendants' Motion to Dismiss is nothing more than a reiteration of his arguments in relation to the remand motion. Rather than address what should be the effect if the Court found that Plaintiff's claims were preempted by SLUSA, Plaintiff chose instead to repeat his previously well-argued assertions that the matter should be remanded. In the final paragraph of the brief, Plaintiff requests time to submit "an

additional brief that addresses the balance of Defendants' motion" should the Court find the case subject to federal jurisdiction. This request is denied. Plaintiff has offered no reason why the matter could not have been amply and adequately briefed within the time allotted by the Local Rules. Moreover, Plaintiff admits in his brief in support of the Motion to Remand that "any covered claims are subject to immediate dismissal under 15 U.S.C. §§ 77p(b) and 78bb(f)(1) once the action has been removed to federal court." Pl.'s Br. at 15. Should Plaintiff determine that amended pleadings that comply with SLUSA are possible, he may move to file an amended Complaint and the Court will rule on the motion in due course.

11. Defendants' Motion to Dismiss also asserts that dismissal should be granted because Plaintiff's claims are barred: 1) by the applicable statute of limitations; 2) because the insurance commissioner approved the plan; and 3) by the *Grove* class action settlement.