# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ELIAS GUERRA, in his capacity
as Securityholder Representative,
and POPWALLET, INC.,

        Plaintiffs,

        v.

SNAP, INC.,

        Defendant.

C.A. No. 2024-1009-CDW

## REPORT GRANTING DEFENDANT'S MOTION TO DISMISS

Date Submitted:  January 8, 2026
Date Decided:  May 1, 2026

James S. Green, COLE SCHOTZ PC, Wilmington, Delaware; Tyler Hudson, WAGSTAFF & CARTMELL LLP, Kansas City, Missouri; *Counsel for Plaintiff Elias Guerra*

William M. Lafferty, Susan W. Waesco, Sara Carnahan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Counsel for Defendant Snap Inc.*

**WRIGHT, M.**

The former chief executive officer and co-founder of a company merged out of existence several years ago claims the acquiring company fraudulently induced the acquired company and its stockholders to agree to the merger by misrepresenting the acquiring company's ability to handle a major change to its business model. Acting as the duly appointed representative of the acquired company's former stockholders, the former CEO wants the transaction unwound or, alternatively, an award of rescissory damages. The acquiring company seeks dismissal on multiple grounds, including that this action is preempted by the federal Securities Litigation Uniform Standards Act because the plaintiff is pursuing representative claims based on state law that arise from alleged misrepresentations or omissions made in connection with the purchase or sale of covered securities. For the reasons explained below, I conclude that state-court adjudication of this action is preempted under the Securities Litigation Uniform Standards Act and recommend the court grant defendant's motion to dismiss.

## I.     BACKGROUND

Plaintiff Elias Guerra ("Guerra") is a co-founder and former chief executive officer of Popwallet, Inc. ("Popwallet").[1] Defendant Snap, Inc. ("Snap") is a Delaware corporation.[2] Popwallet was a Delaware corporation

---

[1] *See* Verified Am. Compl. ("Am. Compl.") ¶¶ 2, 11.

[2] *Id.* ¶ 16.

that Snap acquired in 2021.[3]  Popwallet was "a mobile wallet marketing platform that allowed company partners to create and manage mobile wallet cards and deliver contactless customer experiences that included dynamic coupons and offers, rebates, loyalty and gift cards as well as other branded content."[4]  Prior to its merger with Snap, Popwallet "was a successful marketing partner to large global brands and it began to receive unsolicited acquisition interest by large technology companies."[5]

A.     Snap's Advertising Business

This action focuses on Snap's advertising business, which the amended complaint asserts "heavily depended on [Snap]'s ability to track users' activity on their devices, so that advertisers could both target their ads to specific users based on their interests and measure the effectiveness of those ads."[6]  The amended complaint explains that, for a time, Apple Inc. "include[d] a data system known as 'Identifiers for Advertisers' ('IDFA')."[7]  "From its inception," the amended complaint maintains that "IDFA was vital for companies that depended on third-party advertising to create revenue because it

---

[3] *Id.* ¶¶ 16, 77.

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 3.

[6] *Id.* ¶ 23.

[7] *Id.* ¶ 24.

allowed targeted advertising to particular users and effective measurement of an advertisement's success with a particular user."[8]

This all allegedly changed in June 2020, when Apple "publicly announced an upcoming change to user data privacy and protection that it referred to as 'App Tracking Transparency' ('ATT')."[9]  The amended complaint further explains that "ATT would change IDFA tracking from an 'opt-out' option to an 'opt-in' option, meaning that a user's data would not be subject to IDFA tracking unless that user affirmatively opted into that type of tracking."[10]  The amended complaint states that the introduction of ATT was inevitably poised to harm Snap's advertising business, noting that "[i]n 2020, roughly 70% of Snap's advertising revenue derived from users of Apple devices, including iPhones and iPads[,] and a significant portion of Snapchat's 265 million daily users used Apple devices to access the platform."[11]

## B. Snap's Professed Confidence in the Face of Market Changes

Central to this action are Snap's public statements following the announcement of ATT.  The amended complaint alleges that "Snap downplayed the severity of [ATT's] impact and claimed that Apple offered an

---

[8] *Id.* ¶ 25.

[9] *Id.* ¶ 26.

[10] *Id.* ¶ 27.

[11] *Id.* ¶ 32.

alternative tool known as SKAdNetwork ('SKAN') that would allow Snap and its advertisers to continue to achieve targeting advertising even if no longer on an individual basis."[12]   The amended complaint also alleges that Snap "reassure[d] the market by stating in various ways and in various mediums that its advertising business was well-equipped to handle the ATT changes and maintain its strong record of revenue growth."[13]

The amended complaint highlights different public statements Snap or its representatives made that allegedly show Snap maintained an unreasonably overconfident public face to the impending changes to digital advertising.[14] Snap's public statements allegedly "contrasted those of other companies that relied upon IDFA and third-party advertisers."[15]   The amended complaint observes that market analysts specifically noted Snap's professed confidence in the face of ATT.[16]

## C.    Snap Pursues Popwallet

The amended complaint alleges that Popwallet and Snap began exploring Snap's possible acquisition of Popwallet in May 2021.[17] The parties allegedly

---

[12] *Id.* ¶ 34.

[13] *Id.* ¶ 36.

[14] *See id.* ¶¶ 37–43, 46, 88–89, 101–102.

[15] *Id.* ¶ 38.

[16] *See id.* ¶¶ 44–45.

[17] *See id.* ¶¶ 55–57.

agreed on purchase terms "which include: a purchase price of $25 million," made up "of $20 million in restricted stock and $5 million cash. There was also $5 million in restricted stock for continuing employees who would join Snap."[18] The amended complaint alleges that "Popwallet was amenable to the restricted stock because, based on Snap's public statements and filings, Snap was well-positioned to weather the upcoming ATT changes and continue to experience its historic growth."[19] The amended complaint alleges the parties executed a term sheet, purportedly on July 1, 2021, that reiterated the above purchase terms.[20]

Guerra and nonparty Wes Biggs[21] conducted Popwallet's due diligence, on behalf of its stockholders, before the sale closed.[22] Guerra and Biggs purportedly did so by reviewing Snap's public statements and filings with the U.S. Securities and Exchange Commission ("SEC").[23]

## D. Snap Acquires Popwallet

On September 9, "Popwallet's board of directors unanimously approved the Merger Agreement and recommended that Popwallet's stockholders do the

---

[18] *Id.* ¶ 58.

[19] *Id.*

[20] *Id.*

[21] Biggs is a co-founder of Popwallet. *See id.* ¶¶ 2, 51.

[22] *Id.* ¶ 61.

[23] *See id.* ¶¶ 61, 63.

same."[24]   On September 11, "Popwallet's board of directors delivered to Popwallet's former stockholders a Consent Solicitation and Information Statement that contained the Merger Agreement along with other related documents on which to base their consent to the Snap merger."[25]

The merger closed on October 1.  "Popwallet and its stockholders received 219,042 shares of restricted Snap stock valued at $75.29 per share, the average stock price for the 20 days prior to one day before close."[26]  "Guerra signed the Merger Agreement twice.  Once as Popwallet's CEO and once as Securityholder Representative."[27]  The result of the merger was that Popwallet was "merg[ed] out of existence[.]"[28]

## E.   Snap's Performance Drops

The amended complaint alleges that, on October 21, 2021, Snap "announced that it would for the first time since the year it went public miss the lower end of its revenue guidance because of significant problems its advertisers were experiencing with implementing SKAN."[29]  The amended complaint notes that Snap's third quarter 2021 report explained that Apple's

---

[24] *Id.* ¶ 72.

[25] *Id.* ¶ 73.

[26] *Id.* ¶ 77; *see also* Transmittal Aff. of Sara Carnahan in Supp. of Def. Snap Inc.'s Opening Br. in Supp. of Mot. to Dismiss Pls.' Am. Compl. ("Carnahan Aff."), Dkt. 24 Ex. A ("Merger Agreement") § 1.4; *id.* Ex. A § 3.9(c).

[27] Am. Compl. ¶ 78.

[28] *Id.* ¶ 16.

[29] *Id.* ¶ 80.

changes to user data access "have adversely affected [Snap's] targeting, measurement, and optimization capabilities, and in turn affected [its] ability to measure the effectiveness of advertisements on [its] services."[30]

According to Guerra, "these representations stood in marked contrast to Snap's past statements on Apple's changes to user data access."[31] The amended complaint notes that "[a]nalysts attributed the plummeting of Snap's stock to Snap's misrepresentations and omissions[.]"[32] Guerra also alleges that Snap's after-the-fact disclosures "had a significant impact on the value of its stock. Snap's stock price plummet[ted] over 26% in one day—from $75.11 to $55.14 and wip[ed] out $27 billion in market capitalization."[33] By the end of the one-year restriction period, the amended complaint alleges that the price of Snap's shares fell to $9.98.[34]

## F.    The California Action

This is not the first action to arise from Snap's purported misrepresentation of its preparation for and anticipated performance following the foregoing market changes. In November 2021, a Snap stockholder filed a putative class-action against Snap and certain officers in the United States

---

[30] *Id.* ¶ 81.

[31] *See id.* ¶¶ 82, 84.

[32] *Id.* ¶ 86.

[33] *Id.* ¶ 85.

[34] *Id.* ¶ 98.

District Court for the Central District of California.[35]   The third amended

complaint in the California Action "allege[es] violations of Sections 10(b) and

20(a) of the Securities Exchange Act of 1934 and Rule 10b-5."[36]   After the

filing of the third amended complaint in the California Action, the defendants

moved to dismiss the action.[37]   On September 26, 2023, the district court

granted the defendants' motion to dismiss.[38]   The lead plaintiff appealed that

decision and, on December 20, 2024, the Ninth Circuit reversed the district

court's dismissal of the action.[39]

After the reversal, the parties to the California Action mediated the

dispute and reached a $65 million settlement.[40]   Under the settlement

agreement, the settlement class agreed to release:

> all claims (including, but not limited to, Unknown
> Claims), demands, losses, rights, and causes of
> action of any nature and description, that have been
> or could have been asserted in the Action or could in

---

[35] *Black v. Snap Inc.*, No. 2:21-cv-08892-GW-RAO ("California Action" and cited as "Cal. Action"), Dkt. No. 1 (Nov. 11, 2021).

[36] *Okla. Firefighters Pens. & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634, at *1 (9th Cir. Dec. 20, 2024).

[37] Carnahan Aff. Ex. L at 1.

[38] *Id.* Notably, the amended complaint in this action lists—in identical order—the same purported misrepresentations that the district court listed in an opinion dismissing the California Action's second amended complaint. *Compare id.* Ex. K at 9–10, *with* Am. Compl. ¶ 101(a)–(e).

[39] *See Snap Inc.*, 2024 WL 5182634, at *1.

[40] Cal. Action, Dkt. No. 199 at 3–4.

the future be asserted in any forum, whether foreign or domestic, whether arising under federal, state, common, or foreign law, which arise out of or relate to, directly or indirectly: (i) any of the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, or referred to, in the Complaints; and (ii) the purchase, acquisition, holding, sale, or disposition of Snap common stock or options by any member of the Settlement Class during the Settlement Class Period.[41]

The class action administrator for the California Action filed a supplemental declaration describing the settlement notification process and reporting on requests for exclusion from the class.[42] The administrator noted she received 35 valid requests for exclusion from potential settlement class members.[43] She observed that "34 of these requests were from former individuals and entities who were former stockholders of Popwallet, Inc., . . . who acquired Snap common stock as partial consideration for their sale of Popwallet to Snap during the Class Period, and which transaction is the subject of pending litigation in Delaware Chancery Court."[44] The administrator attached a table listing the 35 potential settlement class members that requested exclusion from the settlement class. Guerra is not listed by name as a potential

---

[41] *Id.*, Dkt. No. 183-2 at 12.

[42] *See id.*, Dkt. No. 197-1.

[43] *Id.* ¶ 10. Four of the opt-out requests were submitted late. *Id.* One of the tardy requests appears to be from Biggs. *See id.* Ex. A at 2.

[44] *Id.*, Dkt. No. 197-1 ¶ 10.

class member that requested exclusion from the settlement, so it is unclear if Guerra opted out of the settlement.[45]

On April 22, 2026, the district court granted the lead plaintiff's motion for final approval of class action settlement, as well as the lead plaintiff's motion for an award of attorneys' fees and reimbursement of litigation expenses.[46]

## II. PROCEDURAL POSTURE

On September 30, 2024, Guerra, as the sole plaintiff, filed the original complaint.[47] Guerra identified himself as a party "solely in his capacity as the Securityholder Representative of all former stockholders of Popwallet, Inc."[48] The original complaint asserted counts for equitable fraud and common-law fraud. On January 21, 2025, Snap moved to dismiss the original complaint.[49] Snap argued that Guerra's claims were preempted by the Securities Litigation

---

[45] *See id.* Ex. A. At oral argument here, Snap's counsel asserted that Guerra is a member of the settlement class. *See* Tr. of 1-8-2026 Oral Arg. on Def.'s Mot. to Dismiss, Dkt. 35 ("Tr.") at 68. Guerra's counsel did not dispute that assertion, instead only disputing "that the former Popwallet shareholders are members of that class." *Id.* 69.

[46] *See* Cal. Action, Dkt. No. 199.

[47] Dkt. 1.

[48] *Id.* at 1.

[49] Dkt. 9.

Uniform Standards Act ("SLUSA").[50] The opening brief also argued that Guerra failed to state a claim for either fraud count.[51]

In response to the motion to dismiss, on April 11, Guerra filed the amended complaint.[52] The amended complaint changed Guerra's denomination from "Securityholder Representative of former stockholders of Popwallet," to just "Securityholder Representative."[53] Guerra also purported to add Popwallet as another plaintiff, despite acknowledging Popwallet no longer exists.[54] The amended complaint keeps the same equitable and common-law fraud counts as the original complaint but removed many references to Popwallet's former stockholders.[55]

On April 28, Snap again moved to dismiss.[56] The Motion again argues this action is preempted by SLUSA and the amended complaint otherwise fails to state a claim for fraud.[57] The parties completed briefing on August 1. On

---

[50] *See id.* at 1–2 (citing 15 U.S.C. § 78bb(f)(1)).

[51] *See id.* at 2–3.

[52] Am. Compl.

[53] *Id.* 1.

[54] *Id.*; *see also id.* ¶ 16.

[55] *See generally* Redline Version to Pls.' Verified Am. Compl., Dkt. 19.

[56] Dkt. 21 ("Motion" and cited as "Mot.").

[57] *See generally* Def. Snap Inc.'s Opening Br. in Support of Its Mot. to Dismiss Pls.' Verified Am. Compl. ("Opening Br."), Dkt. 24.

January 8, 2026, the court held oral argument on the Motion.[58]  At that time, I took the matter under advisement.

## III.   LEGAL STANDARD

Under SLUSA, a state action "must be dismissed if it is (1) a 'covered class action' (2) based on state law (3) involving a 'covered security' (4) alleging either (a) a misrepresentation or omission of a material fact or (b) the use of any manipulative or deceptive device or contrivance (5) 'in connection with' the purchase or sale of a covered security." *Breakaway Sols., Inc. v. Morgan Stanley & Co. Inc.*, 2004 WL 1949300, at *3 (Del. Ch. Aug. 27, 2004) (citing *Zoran v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 603 (D. Del. 2002)).

## IV.   ANALYSIS

Before I evaluate this action's preemption under SLUSA, I briefly address the issue of Popwallet's inclusion in the amended complaint as a plaintiff.

### A.    Popwallet is Not a Plaintiff

The amended complaint acknowledges that Popwallet ceased to exist upon its merger with Snap.[59]  Under Section 259 of the Delaware General Corporation Law:[60]

---

[58] Dkt. 34.

[59] *See* Am. Compl. ¶ 16.

When any merger or consolidation shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, **shall cease and the constituent corporations shall become a new corporation or be merged into 1 of such corporations, as the case may be, possessing all the rights, privileges, powers and franchises as well of a public as of a private nature**, and being subject to all the restrictions, disabilities and duties of each such corporations so merged or consolidated; and all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations[.]

8 *Del. C.* § 259 (emphasis added). A merged corporation that no longer exists, therefore, passes its rights to the successor entity. This transfer of rights includes "the power to sue and be sued."[61]

---

[60] 8 *Del. C.* §§ 101–398.

[61] *See In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 868 (Del. Ch. 1998) ("Upon the effective date of a merger or consolidation, all assets of the merged corporation, including any causes of action that may exist on its behalf, pass to the surviving corporation by operation of law.") (citing 8 *Del. C.* § 259(a)); *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972) ("Upon the formation of [the new entity], the rights of the constituent corporations . . . passed to their successor, [the new entity], pursuant to the agreement of merger and 8 *Del. C.* § 259."); *see also Paul Rivera & Kalibrr, Inc. v. Angkor Cap. Ltd.*, 2024 WL 3873050, at *2 (Del. Ch. Aug. 20, 2024) (a corporation's "corporate powers included the power to '[s]ue and be sued in all courts and participate, as a party or otherwise, in any judicial administrative, arbitrative or other proceeding, in its corporate name.'") (quoting 8 *Del. C.* § 122(2)).

- 13 -

When Popwallet merged with Snap, it ceased to exist. Popwallet thus cannot proceed in this action and is dismissed as a plaintiff. Guerra, acting as Securityholder Representative on behalf of Popwallet's former stockholders, is the only recognized plaintiff. [62]

## B. This Action is Completely Preempted By SLUSA

As noted above, Guerra asserts two claims against Snap in the amended complaint: equitable fraud and common-law fraud.

For his equitable fraud claim, Guerra alleges "Snap publicly made numerous material misrepresentations and omissions meant to induce Popwallet and its former stockholders to enter into the Merger Agreement with a purchase price that Snap would pay in inflated stock."[63] Guerra also alleges "Popwallet, its board of directors, and Elias Guerra as the Securityholder Representative justifiably relied on Snap's public statements and SEC filings in negotiating and agreeing to the Merger Agreement's terms because Snap had an independent duty to provide accurate information to stockholders and the SEC."[64] Guerra further alleges he (and Popwallet's former stockholders) "are

---

[62] Guerra's argument on this point is trifling. *See* Answering Br. 21–23. He tries to transform the issue into one about Popwallet's "standing," but this is about Popwallet's non-existence and the well-established consequences that flow from it. Popwallet does not exist anymore, so it cannot be a plaintiff.

[63] Am. Compl. ¶ 100.

[64] *Id*. ¶ 106.

entitled to recission and rescissory damages in an amount to be determined at trial."[65]

Guerra's common-law fraud claim makes essentially the same allegations as the equitable fraud claim.[66]  Both fraud claims are state-law claims that fall within SLUSA's preemptive scope.

### 1.  This Action is a "Covered Class Action"

The first SLUSA preemption element requires the action to be a "covered class action."  *See Breakaway Sols.*, 2004 WL 1949300, at *3 (citation omitted).  In the context of single actions, SLUSA defines "covered class action" as:

> (i)  any single lawsuit in which—
>
> (I)  damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
>
> (II)  one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members[.]

---

[65] *Id.* ¶ 110.

[66] *Compare id.* ¶¶ 99–110, *with id.* ¶¶ 111–121.

15 U.S.C. § 75bb(f)(5)(B).  Snap argues that this action meets type (II) because "Guerra admits that he is not bringing his claims individually, but rather 'in his capacity as Securityholder Representative[.]'"[67]  Snap observes that Guerra's status as Securityholder Representative gives him "'full power and authority' to represent former Popwallet stockholders in 'all matters' arising under the Merger Agreement[.]"[68]  Snap next argues that this case falls into either type of SLUSA's single-action definitions because the amended complaint "continues to seek rescissory damages on behalf of the former Popwallet stockholders."[69]  Finally, Snap asserts that the amended complaint raises predominating questions of law or fact common to Popwallet's former stockholders.[70]

Guerra argues that this case does not fall within SLUSA's definition because Guerra is "not seeking damages 'on behalf of more than 50 persons' under SLUSA, and common questions do not predominate across the class because there is no class."[71]  Guerra insists he only seeks "rescission of the Merger Agreement based on Snap's fraudulent inducement of Popwallet and the Securityholder Representative."[72]  Although Guerra concedes his amended

---

[67] Opening Br. 24 (citing Am. Compl. 1).

[68] *See id.* 24–25 (citing Merger Agreement § 10.19(a)).

[69] *Id.* 25.

[70] *See id.* 26.

[71] Pls.' Br. in Response to Snap Inc.'s Mot. to Dismiss, Dkt. 26 ("Answering Br.") at 13.

[72] *Id.*

complaint seeks rescissory damages, he says his amended complaint *really* seeks *only* rescission, and that rescissory damages would be an alternative equitable remedy and not a form of damages.[73]

Guerra's arguments fail. Guerra's first argument fails because it ignores SLUSA's type (II) definition of "covered class." Type (II) does not impose type (I)'s "50-plus" requirement.[74] Guerra's second argument fails because the amended complaint plainly requests damages.[75] The reason Guerra seeks rescissory damages is obvious: he knows restoration of the status quo ante—unwinding a transaction that closed 55 months ago and terminated the corporate existence of Popwallet—is almost certainly infeasible.[76] And when rescission of a merger is unavailable, this court can award rescissory damages as

---

[73] *See id.* 21–22, 46–47.

[74] *See* 15 U.S.C. § 75bb(f)(5)(B)(i)(II).

[75] *See, e.g.*, Am. Compl. 41 ("Rescission of the Merger Agreement and rescissory damages in an amount to be determined at trial[.]").

[76] Guerra effectively concedes infeasibility. *See* Answering Br. 22 ("Plaintiffs . . . must resort to rescissory damages due to Defendant's conduct in shutting down Popwallet as a separate operating company."); Tr. 37 (arguing the court can award restitutionary or rescissory relief "in a situation where the companies can't be restored to the status quo because Popwallet, the company, can't be given back because it no longer exists."). Infeasibility is a fact-sensitive determination, but the court has found rescission infeasible sooner than Guerra seeks it here. *See Winston v. Mandor*, 710 A.2d 831, 833–34 (Del. Ch. 1996) (describing the test for when rescission of a merger is infeasible and finding rescission infeasible one year after the challenged transactions closed); *see also FdG Logistics LLC v. A&R Logistics Hldgs., Inc.*, 131 A.3d 842, 864 (Del. Ch. 2016) ("Here, I 'can conceive of no possible circumstance in which I would rescind the Merger,' which closed more than three years ago.") (quoting *RGC Int'l Invs., LDC v. Greka Energy Corp.*, 2000 WL 1706728, at *16 n.59 (Del. Ch. Nov. 8, 2000).

*monetary* legal relief instead.[77] Guerra is wrong that rescissory damages are a form of equitable remedy—they are, true to name, damages.[78]

Guerra next invokes the Third Circuit's decision in *LaSala v. Bordier et. Cie*[79] to argue that this case does not present predominating questions of fact or law common to Guerra and Popwallet's former stockholders because the former stockholders are not the truly injured parties—Popwallet and Guerra (as the Securityholder Representative) are.[80] *LaSala* is distinguishable.

In *LaSala*, an entity, AremisSoft, "allegedly executed a classic 'pump-and-dump' scheme" and, after being discovered, ultimately petitioned for Chapter 11 bankruptcy. 519 F.3d at 126. At the same time, "a group of purchasers of AremisSoft stock" were litigating a federal class-action securities suit seeking "rescission of their stock-purchase contracts[.]" *Id.* As part of a settlement with those stockholders, "the parties to the bankruptcy proceeding agreed that the plan of reorganization would assign to the [stockholders] all causes of action owned by AremisSoft." *Id.*

---

[77] *See In re Tesla, Inc. Deriv. Litig.*, 351 A.3d 1005, 2025 WL 3689114, at *13 (Del. Dec. 19, 2025) ("Rescissory damages are the economic equivalent of rescission and are 'only available in cases where rescission is warranted but not feasible.' Rescissory damages are not equitable in nature because they do not return the aggrieved party to her original position. Rather, rescissory damages are a form of legal relief that monetarily approximates the remedy of rescission.") (citations omitted).

[78] *See id.*

[79] 519 F.3d 121 (3d Cir. 2008).

[80] *See* Answering Br. 13–15.

The foregoing stockholders were not directly assigned the causes of action. Instead, "the plan of reorganization provided for the creation of a state-law trust . . . to take title to and prosecute the assigned claims for the [stockholders'] benefit." *Id.* at 127. Accordingly, the trustees—not the stockholders—initiated the *LaSala* action. *Id.*

The district court found the state-law breach of fiduciary duty claims in *LaSala* were completely preempted under SLUSA. *Id.* at 128. But the Third Circuit reversed the district court's decision. The Third Circuit found those claims were brought on behalf of AremisSoft's bankruptcy estate, not AremisSoft's stockholders, because the estate was the party that assigned state-law causes of action to the Trust. *Id.* at 133. Moreover, the breach of fiduciary duty claims did not concern the stockholders and, thus, "no questions of law or fact . . . involve[d] them[.]"[81]

The Third Circuit also found that the "persons" relevant under SLUSA are "the original owners of the claim—those injured by the complained-of conduct, as those are the persons who might have common questions of law or

---

[81] *LaSala*, 519 F.3d at 133 ("There are no questions of law or fact that involve them, much less common ones that predominate over individual ones. Rather, the relevant issues are (1) whether the Directors were fiduciaries of AremisSoft, (2) whether the Directors made misrepresentations or traded on inside information in violation of their fiduciary duties, (3) whether the Banks provided material assistance with the requisite knowledge to be liable for aiding and abetting, and (4) whether AremisSoft was damaged by the concerted actions of the Directors and Banks.") (citing *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 172 (Del. 2002)).

fact related to the claim that predominate over individual questions of law or fact." *Id.* at 134. Accordingly, the Third Circuit reasoned that the assignors of causes of action (like the bankruptcy estate in *LaSala*), rather than the beneficiaries of an assignee (like the stockholders in *LaSala*) are the "persons" that SLUSA contemplates. *See id.* Because the stockholders were not the assignors of the causes of action, they were not found to be the requisite injured parties under SLUSA. *See id.* at 134, 137.

Popwallet's former stockholders are distinct from the *LaSala* stockholders. Guerra brought this action solely as Securityholder Representative to remedy alleged injuries dealt to Popwallet's former stockholders, whom Guerra contracted to represent.[82] In this respect, Popwallet's former stockholders are more similar to the bankruptcy estate that assigned the *LaSala* plaintiffs its causes of action than they are to the *LaSala* stockholders.[83] Although Guerra now argues otherwise in his brief, the

---

[82] *See, e.g.*, Am. Compl. 1; Merger Agreement § 10.19(a); *see Pryor v. IAC/InterActiveCorp*, 2012 WL 2046827, at *4 (Del. Ch. June 7, 2012) ("Typically, a stockholder representative is authorized to act on a group of stockholders' behalf as an attorney-in-fact for certain purposes delineated by the relevant agreement."); *see also Coughlan v. NXP B.V.*, 2010 WL 1531596, at *3 (Del. Ch. Apr. 15, 2010) ("Coughlan, as Stockholders' Representative, is a party in whose name a contract has been made for the benefit of the GloNav Stockholders, who are admittedly the real parties in interest. Accordingly, she may bring this action without joining the GloNav stockholders.").

[83] *See LaSala*, 519 F.3d at 134 ("[T]he Trust is not bringing its claims 'on behalf of' the [stockholders], as SLUSA uses the term, because the [stockholders] are not the injured parties; rather, the Trust is bringing the claims 'on behalf of' AremisSoft.").

amended complaint alleges that Popwallet's former stockholders are the injured parties on whose behalf Guerra seeks relief.[84] That stockholder injury is the focus of this action is obvious given the fact that Popwallet is an extinct entity, and Guerra cannot seek redress for its alleged injuries.[85]

Guerra is correct that "both Popwallet and Plaintiff Guerra signed the Merger Agreement,"[86] but he elides the fact that when he says "Plaintiff Guerra" he means he signed the Merger Agreement as Securityholder Representative *on behalf of* Popwallet's former stockholders.[87] Guerra also concedes that Popwallet's former stockholders conducted their due diligence *through* him.[88] At oral argument, Guerra's counsel referred to the amended

---

[84] *Contrast* Answering Br. 14 ("Here, as in *LaSala*, Popwallet and the Securityholder Representative are the 'true' injured parties, not the shareholders."), *with* Am. Compl. ¶¶ 13 ("*Popwallet's former stockholders* could do nothing but watch and wait while the one-year embargo on selling their restricted stock played out."); 61 ("*Popwallet stakeholders* through Elias Guerra and Wes Biggs conducted due diligence on Snap while they continued to engage in weekly conversations with Snap's corporate development team."); 70 ("At no point did Snap disclose to the public, Popwallet, its board of directors, *or its former stockholders* that Apple's ATT change was poised to severely impact or in fact had already severely impacted Snap's advertising revenue[.]"); 100 ("Snap publicly made numerous material misrepresentations and omissions meant to induce Popwallet *and its former stockholders* to enter into the Merger Agreement with a purchase price that Snap would pay in inflated stock.") (emphasis added).

[85] *See* 8 *Del. C.* § 259; *supra* note 61.

[86] Answering Br. 2.

[87] Merger Agreement, Third Signature Page. Guerra also signed the Merger Agreement on Popwallet's behalf. *See id.*, Second Signature Page; *see also* Am. Compl. ¶ 78.

[88] Am. Compl. ¶ 61.

- 21 -

complaint's allegations of stockholder injury as "loose language,"[89] but I do not believe this is so.

Guerra's original complaint—which did not include Popwallet as co-plaintiff—focused heavily on the former stockholders' injuries. In fact, the original complaint expressly states that Guerra "brings this action on behalf of Popwallet's former shareholders for rescissory and other damages caused by Snap's misleading and false statements and omissions."[90] It was only after Snap first raised SLUSA preemption that Guerra then tried to add Popwallet—an entity no longer in existence—as a co-plaintiff and cut references to stockholder injury from the amended complaint.[91]

Plaintiffs seeking to avoid SLUSA preemption "cannot 'avoid its application through artful pleading that removes the covered words . . . but leaves in the covered concepts.'"[92] Such is the case here. Although Guerra attempted to remove references to stockholder injury from the amended complaint, the substance of the amended complaint remains the same as the

---

[89] Tr. 60.

[90] Verified Compl., Dkt. 1 ¶ 96.

[91] *See generally* Redline Version to Pl.'s Verified Am. Compl., Dkt. 19.

[92] *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549 (6th Cir. 2011) (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310–11 (6th Cir. 2009), *cert. denied*, 560 U.S. 925 (2010)). *Accord Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) ("Plaintiff also contends that as master of his own complaint, he is entitled to plead around SLUSA. But SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting.").

original: Guerra, as Securityholder Representative, asserts claims arising from the theory that Snap fraudulently induced Popwallet's former stockholders to acquire Snap stock through the merger at an inflated value.[93]

*LaSala*, therefore, does not support rejection of SLUSA preemption here because Guerra is a plaintiff representing the interests of injured parties who authorized his action on their behalf. Popwallet's former stockholders, not Guerra or Popwallet, are the "persons" with common questions of fact and law, and Guerra acts on their behalf. This action is a covered class action under SLUSA.

### 2. This Action is Based on State Law

The second SLUSA preemption element asks if the claims asserted in the state court complaint are state-law claims. *See Breakaway Sols.*, 2004 WL 1949300, at *3 (citation omitted). Guerra's claims are state-law claims,[94] and he does not try to argue otherwise.[95]

### 3. This Action Involves a "Covered Security"

The third SLUSA preemption element asks if the action involves a "covered security." *See id.* SLUSA defines "covered security" to follow "the

---

[93] *See, e.g.*, Am. Compl. ¶ 100 ("Snap publicly made numerous material misrepresentations and omissions meant to induce Popwallet *and its former stockholders* to enter into the Merger Agreement with a purchase price that Snap would pay in inflated stock.") (emphasis added).

[94] *See* Am. Compl. ¶¶ 99–110 (Count I), ¶¶ 111–121 (Count II).

[95] *See* Answering Br. 11 (arguing "SLUSA is inapplicable because the first, third, and fifth elements are lacking"); *see also id.* 10 n.1, 12 n.2, 14.

standard for a covered security specified in paragraph (1) or (2) of section 18(B) of the Securities Act of 1933, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred[.]" 15 U.S.C. § 75bb(f)(5)(E). Relevantly, under Section 18(b) of the Securities Act of 1933:

> A security is a covered security if such security is—
>
> (A)     A security designed as qualified for trading in the national market system pursuant to section 78k-1(a)(2) of this title that is listed, or authorized for listing, on a national securities exchange (or tier or segment thereof); or
>
> (B)     A security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A).

*Id.* § 77r(b)(1). In consideration of the Snap merger, Popwallet's former stockholders received restricted shares of Snap's Class A common stock.[96]

Guerra argues this action does not involve a "covered security" under SLUSA because the shares of Snap that Popwallet's former stockholders received in the transaction were restricted and could not be transferred for a year after the transaction closed.[97]

---

[96] *See* Merger Agreement § 1.4; *id.* Ex. A § 3.9(c).

[97] *See* Guerra Answering Br. 19 ("Because the restricted and unregistered Snap stock could not be traded on a national exchange at the time of Snap's fraud and misrepresentations, . . . [the] action does not involve 'covered securities' under SLUSA."); *see also* Merger Agreement Ex. A § 3.9(c) ("Such Stockholder acknowledges and agrees that the shares of Parent Common Stock are 'restricted securities' under the United States federal securities Legal Requirements . . . and may

In response, Snap asserts that the issued stock meets either prong of SLUSA's definition. Snap argues that "Section 18(b)(1) [of the Securities Act of 1933] does not carve out stock that is subject to a time restriction, like that at issue here."[98] Snap notes that "the stock acquired by the former Popwallet stockholders is undisputably Snap Class A common stock."[99] Accordingly, Snap argues that, at minimum, Popwallet's former stockholders received shares of stock that "have the same seniority as Snap's publicly traded Class A common stock."[100] This argument is correct.

"A senior security has 'priority over another class as to the distribution of assets or the payments of dividends." *In re Metro Secs. Litig.*, 532 F. Supp. 2d 1260, 1298 (E.D. Wash. 2007) (quoting 15 U.S.C. § 77r(d)(4)). The restriction the Merger Agreement imposes on the Class A Snap stock issued to Popwallet's former stockholders only affects transfers of the stock.[101] A restriction on transferring a stock does not affect the holder of that stock's right to receive distributions in accordance with that stock's class or preference.

---

not be resold in violation of this Agreement and applicable securities Legal Requirements.").

[98] Def. Snap Inc.'s Reply Br. in Further Supp. of Mot. to Dismiss Pls.' Am. Compl., Dkt. 28 ("Reply Br.") at 9.

[99] *Id.*

[100] *Id.* 10.

[101] *See* Merger Agreement Ex. A § 3.9(c) ("Such Stockholder acknowledges and agrees that the shares of Parent Common Stock are 'restricted securities' under the United States federal securities Legal Requirements . . . and may not be resold in violation of this Agreement and applicable securities Legal Requirements.").

Accordingly, the restricted Class A Snap stock that Popwallet's former stockholders received are of the same seniority as Snap's unrestricted Class A common stock. The stock is, therefore, a "covered security" under SLUSA, and the third element of SLUSA preemption is established.

### 4. The Amended Complaint Alleges Misrepresentations or Omission of Material Facts

The fourth SLUSA preemption element asks if the complaint alleges "either (a) a misrepresentation or omission of a material fact or (b) the use of any manipulative or deceptive device or contrivance." *Breakaway Sols.*, 2004 WL 1949300, at \*3 (citation omitted). In substance, the amended complaint almost exclusively alleges Snap misrepresented or omitted material facts before execution of the merger.[102] Guerra concedes this element is met.[103]

### 5. The Alleged Misrepresentations Were Made "in Connection With" the Purchase or Sale of a Covered Security

The fifth SLUSA preemption element requires the amended complaint to allege that the misrepresentations or omissions were made in connection with the sale or purchase of covered securities. *See id.* A misrepresentation is "in

---

[102] *See, e.g.*, Am. Compl. ¶¶ 1 ("Unbeknownst to Popwallet, Snap's stock price was inflated because of Snap's fraudulent misrepresentations and half-truths, making the value that Popwallet received considerably less than it bargained for."), 100 ("Snap publicly made numerous material misrepresentations and omissions meant to induce Popwallet and its former stockholders to enter into the Merger Agreement with a purchase price that Snap would pay in inflated stock.").

[103] *See supra* note 95.

connection with the purchase or sale of a covered security" if it is "material to the decision by one or more individuals (other than the fraudster) to purchase or sell a covered security." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014). This includes stock acquired through a merger. *See, e.g.*, *Madden v. Cowen & Co.*, 576 F.3d 957, 966 (9th Cir. 2009) (explaining "in connection with the purchase or sale" of securities has the same broad construction under both SLUSA and Section 10(b) of the Securities Exchange Act of 1934, and "include[s] a stock-for-stock merger.") (citing *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 467–68 (1969)).[104]

Guerra argues the alleged misrepresentations were not "in connection with" the sale of covered securities, but his argument consists of a page-long string cite followed by two conclusory sentences.[105] The amended complaint pleads "Snap publicly made numerous material misrepresentations and omissions meant to induce Popwallet and its former stockholders to enter into the Merger Agreement with a purchase price that Snap would pay in inflated stock[,]"[106] and that Popwallet's former stockholders (including Guerra) relied

---

[104] *See also Sofonia v. Principal Life Ins. Co.*, 378 F. Supp. 2d 1124, 1132 (S.D. Iowa 2005), *aff'd*, 465 F.3d 873 (8th Cir. 2006) ("[T]he pivotal question is whether their acquisition of stock in PFG can qualify as a 'purchase.' The Court finds it does.").

[105] *See* Answering Br. 20–21.

[106] Am. Compl. ¶ 100.

on those misrepresentations when they agreed to the merger and accepted the merger consideration.[107] The fifth SLUSA preemption element is met.

\* \* \*

Each element of SLUSA preemption is present: this action is a covered class action based on state law that involves a covered security and alleges misrepresentations or omissions of a material fact in connection with the purchase or sale of a covered security. Under SLUSA, this action is preempted and must be dismissed.[108]

## V. CONCLUSION

I recommend the court grant defendant's motion to dismiss. This is a Final Report under Court of Chancery Rule 144(b)(2). Under Court of Chancery Rule 144(d)(1), any party who wishes to file exceptions to this report must file their notice of exceptions by May 12, 2026.

---

[107] *Id.* ¶ 106.

[108] Because SLUSA preemption is sufficient to dispose with the entire case, I do not address Snap's arguments that the amended complaint also fails to state claims upon which relief can be granted.